**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ADAM KISSEL,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHELLE H. SEAGULL, in her official capacity as Commissioner of the Connecticut Department of Consumer Protection,<br><br>    Defendant. | Civil Action No. 3:21-cv-00120-JAM<br><br><br>Case Filed: January 28, 2021<br>Hearing Date: May 3, 2021 |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

When Mr. Kissel saw that several provisions of Connecticut law would stifle his ability to speak freely as a charitable fundraiser, he reached out to the Department of Consumer Protection. The Department's response failed to clarify what speech qualifies as a solicitation, and confirmed that Mr. Kissel must submit scripts 20 days before beginning a solicitation campaign.

Now, in the face of a lawsuit, the Department sings a different tune, saying that Mr. Kissel must only register once and can deviate freely from a rough outline. These post-hoc limitations are not codified in regulation or guidance. The Department cannot re-write the unconstitutional statute that it enforces. And a speaker cannot be required to sue to clarify his obligations. *See Buckley v. Valeo*, 424 U.S. 1, 77 (1976) ("Where First Amendment rights are involved, an even 'greater degree of specificity' is required."). The Department's attempt to limit the constitutional damage in response to litigation does not obviate the need for a preliminary injunction.[1]

Nor can the Department ignore binding Supreme Court precedent, which shows that these laws are content-based and subject to strict scrutiny. Yet even under intermediate scrutiny, the Department makes fatal concessions that show these laws do not satisfy an important governmental interest without excessively burdening First Amendment freedoms. An injunction is required.

## I.     The Department Misstates Mr. Kissel's Burden of Proof for an Injunction

The Department argues that Mr. Kissel bears a heightened burden to obtain an injunction because he seeks to "alter rather than maintain the status quo." Opp. at 13. But this standard only applies to a mandatory injunction, which "orders an affirmative act or mandates a specified course of conduct." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006). Mr. Kissel asks this Court to stop enforcement of these laws, not to compel any affirmative act.

---

[1] The Department is entitled to no deference in its belated attempts at statutory construction. Its interpretations are informal and have neither "been subjected to judicial scrutiny" nor can be said to be "time tested." *Christopher R.* v. *Commissioner of Mental Retardation*, 277 Conn. 594, 603 (2006). And the agency's proffered interpretations lack any persuasive value since they are blatantly self-serving and apparently developed in the face of this lawsuit.

II.     **The Department Ignores Binding Supreme Court Precedent
        Which Shows that the Challenged Laws are Content-Based**

Connecticut's requirements for paid solicitors are content-based, and therefore subject to strict scrutiny. The Department's response conflates content-based and viewpoint-based laws and fails to respond to the Supreme Court's most relevant decision on this topic.

In *Reed v. Town of Gilbert*, 576 U.S. 155, 167 (2015), the Supreme Court expressly refuted the Department's argument that content-based laws must reflect "disagreement with the message." Opp. at 15. The Supreme Court clarified that "[i]nnocent motives do not eliminate the danger of censorship presented by a facially content-based statute." 576 U.S. at 167. Instead, the content-based test is quite simple: "a speech regulation is content based if the law applies to particular speech because of the topic discussed or the idea or message expressed." *Id*.

By the Department's own admission, whether Mr. Kissel is engaged in solicitation depends directly on "the topic discussed or the idea or message expressed" by Mr. Kissel. The Department admits that "Plaintiff is free to have any conversations with prospective donors he wishes—about any topic, at any time and in any forum"—except asking for a donation. Opp. at 9.

Mr. Kissel invites his contacts, prospective JMC donors, to (a) post about JMC's focus areas on social media; (b) attend events organized by JMC; (c) contact government officials in support of JMC initiatives; and (d) donate money to JMC. Kissel Suppl. Decl. ¶ 2. The first three are permitted without restriction; the last is burdened because the topic discussed involves a charitable donation. To know which conversation is covered, the Department necessarily looks at the content of the speech.

The only post-*Reed* case that the Department cites on this point, *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335 (2020), supports Plaintiff. In *Barr*, the Supreme Court struck down an exception that allowed robocalls for government debt collection but not for political

campaigns. The Court noted that the legality of a call turned on its content, explaining "[t]hat is about as content-based as it gets." *Id.* The Court rejected arguments that parallel the Department's, such as the notion that such a content-based distinction could be justified as regulation of economic activity or the secondary effects of speech since, as here, the law directly regulated speech. *Id.*[2]

Connecticut's solicitation laws are also content-based because they selectively target only one category of speakers: paid independent fundraisers. Doing so "reflects a content preference," *Barr*, 140 S. Ct. at 2347, because it reinforces longstanding prejudices against paid fundraising, which "necessarily discriminate[s] against small or unpopular charities, which must usually rely on professional fundraisers." *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 799 (1988). In contrast, the Department's lead case involved a law that distinguished between food vending and the sale of other goods, a distinction that did not reflect a content preference. *Mastrovincenzo v. City of New York*, 435 F.3d 78, 82 (2d Cir. 2006). Strict scrutiny applies. The Department does not attempt to defend its laws under this exacting standard, and it cannot do so.

## III.    The Challenged Policies Fail Even Under Intermediate Scrutiny

Even if the Department were correct that intermediate scrutiny applies, Mr. Kissel should still prevail. Under intermediate scrutiny, a policy must be "narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

The Department invokes fears of fraud at an extremely high level of generality. The Department states in a conclusory fashion that the challenged provisions are intended to prevent

---

[2] The Department asserts that Connecticut's solicitation laws are no different from a law which regulates election contributions but not parades. But the key difference is that the application of Connecticut's laws to Mr. Kissel's speech turns exclusively on the content of his speech. If Mr. Kissel asks for a contribution then he is regulated. If he engages in very similar speech that does not ask for a donation then he is not regulated. A better analogy would be a law that regulated only parades that included banners urging support for charitable causes but not parades that included other banners—such a policy would clearly be content-based.

fraud, but never explains how these specific provisions are related to that interest at all. Intermediate scrutiny requires more: "[t]he justification must be genuine, not hypothesized or invented post hoc in response to litigation. And it must not rely on overbroad generalizations." *United States v. Virginia*, 518 U.S. 515, 533 (1996).

The Department also fails to show how the enforcement of the specific policies meaningfully furthers the interests allegedly served. Laws subject to intermediate scrutiny need not "be the least restrictive … means," to advance the government's stated interest, but there must nevertheless be a sufficiently "direct and effective" fit between ends and means. *Ward*, 491 U.S. at 800. A law cannot "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* at 799. *See Frisby v. Schultz*, 487 U.S. 474, 485 (1988) ("A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy").

The Department admits that Mr. Kissel's fundraising through direct, private conversations with known contacts, rather than a telemarketing or mail campaign, "is unique and unusual" and that all of "[t]he provisions at issue in this case primarily were designed for, and most readily apply to, solicitation campaigns conducted through organized and pre-planned telemarketing campaigns." Opp. at 1, 8, 36. In other words, the Department essentially admits that these laws that it is actively enforcing against Mr. Kissel are not tailored to his speech at all.

The Department also fails to seriously consider less restrictive alternatives. The State bears the burden to "demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014); *Bruni v. City of Pittsburgh*, 824 F.3d 353, 371 (3d Cir. 2016) (requiring the state show "the efforts it had

made to address the government interests at stake by substantially less-restrictive methods" or "that it seriously considered and reasonably rejected" these alternatives).

### A.      20-Day Waiting Period

In his letter, Mr. Kissel observed that the need to submit materials 20 days "prior to the commencement of each solicitation campaign" would limit his ability "to speak spontaneously about pressing matters of public concern." PI Memo. Exh. B at 3; Conn. Gen. Stat. Ann. § 21a-190f(c). The Department confirmed the 20-day notice requirement in its January 11 letter. PI Memo. Exh. C at 1. Now, the Department has redefined "campaign"[3] and suggests that only one notice is required for the duration of each contract (which could be indefinite). Opp. at 4–5.

But the problem is that the Charitable Solicitation Act contains no such definition and despite the agency's pronouncement, "there is nothing that prevents the State from changing its mind." *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000). Indeed, in First Amendment cases in particular, the Second Circuit has recognized the ongoing chilling effect and need for an injunction even in cases where an agency argues that a statute "did not proscribe Plaintiff's conduct," so long as the Plaintiff's interpretation "was reasonable enough that plaintiff may legitimately fear that it will face enforcement of the statute." *Id.*

The possibility that the Department will change its mind is particularly problematic for Mr. Kissel because he organizes his efforts around the specific needs and concerns of donors. Each discrete donor contact might reasonably qualify as a separate campaign (even under the state's proffered definition) and trigger a separate filing requirement. Kissel Suppl. Decl. ¶ 1. Mr. Kissel should not be required to risk criminal liability for speaking; this Court should issue a preliminary injunction preventing the Department from enforcing the 20-day waiting period.

---

[3] As "a connected series of operations designed to bring about a particular result." Opp. at 4–5.

Even assuming that the registration requirement applies only once at the start of a contracted campaign, Mr. Kissel still objects to the excessive length of the notice requirement. Being required to wait 20 days before beginning to speak remains a significant burden on his right to speak freely.[4] The Department's highly generalized interest in preventing fraud and providing information to the public may support an advanced registration requirement—and Mr. Kissel is not disputing that in this lawsuit. But it certainly does not justify requiring notice nearly three weeks in advance before a paid fundraiser can solicit potential donors. By requiring such a lengthy advance notice, the Department burdens significantly more speech than is necessary.

Indeed, the Department does not explain why a shorter notice period would not suffice. To the contrary, the Department repeatedly undercuts any basis for needing so much time. It explains repeatedly that the Department does not substantively review the filing material other than for completion. Hudson Decl. ¶ 30. And the Department notes that it processes approximately 25 to 30 of these two-page applications a week, hardly a volume that could justify requiring 20 days to merely check an application for completeness.[5] Hudson Decl. ¶ 25.

The Department does not point to a single case which supports a 20-day waiting period. Instead, the Department relies on two circuit court cases which actually support Plaintiff. *Int'l Soc'y for Krishna Consciousness, Inc. v. Houston*, 689 F.2d 541, 546–50 (5th Cir. 1982); *American Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1247 (10th Cir. 2000). In both cases the time for an agency to process an application was 10 days, half of the time that Defendant requires. Moreover,

---

[4] The Department tries to downplay this delay by arguing that charitable solicitations are not as "time sensitive" as marches or protests and that any negative impact is speculative. But Mr. Kissel provided a specific example of the kind of time-sensitive campaign that he conducts with messaging donors, highlighting how the death of Justice Ginsburg shows the need for the civic education work that JMC does. Less than 10 days after Justice Ginsburg died, the country witnessed the first Presidential debate and the President of the United States catching COVID-19. In that time donors may have become focused on Presidential politics rather than civic reform.

[5] https://portal.ct.gov/-/media/DCP/pdf/Applications_Added_2017/cpc58solicitationnoticeApplication May17pdf.pdf.

6

in both cases the courts held that a 10-day window was justified by the need to substantively review new applications. But Defendant disavows a similar need here.

### B.    Script Requirement

Mr. Kissel's letter made clear that it was impossible for him to comply with the script requirement while adapting his conversation to each donor. PI Memo. Exh. B at 3; Conn. Gen. Stat. Ann. § 21a-190f(c). The Department did not address this concern. PI Memo. Exh. C at 1. This silence left Mr. Kissel with no way to comply with the law. But now the Department alleges that Mr. Kissel must only provide "an outline of the general topics he intends to discuss" and can "adapt to" and deviate from it freely. Opp. at 6. The Department also says that Mr. Kissel need not submit materials he considers to be confidential.[6]

But, again, these interpretations run up against the actual language of the statute, which requires the submission of all "campaign solicitation literature" including "the text of any solicitation to be made orally." Conn. Gen. Stat. Ann. § 21a-190f(c). In addition, a solicitor must certify that the material submitted is "true and complete." *Id.* Under the plain language of the statute, a short outline of topics is inadequate and is not "true and complete." Kissel Suppl. Decl. ¶ 3. Given the disconnections between the Department's response to Mr. Kissel's letter, its post hoc assurances in response to this motion, and the statutory text, an injunction is necessary to protect Mr. Kissel's right to speak freely. *See Vermont Right to Life*, 221 F.3d at 383.

Even the requirement to submit an outline would compel Mr. Kissel to turn a version of his private donor communications into a public record. Kissel Suppl. Decl. ¶ 4; Opp. at 25 (conceding that submissions are available under the state FOIA). That is still a prior restraint even

---

[6] The Department suggests that Mr. Kissel should reach out to the Department if he has any questions about whether certain information is confidential. Opp. at 6. This is not a credible suggestion. Mr. Kissel should not have to tell the Department about privileged conversations in order to know whether he is forced to disclose them. And the Department's response to his letter shows a lack of willingness to provide Mr. Kissel with meaningful guidance.

if the task is purely "ministerial." *Watchtower Bible & Tract Soc'y of New York v. Vill. of Stratton*, 536 U.S. 150, 163 (2002). If Mr. Kissel does not give the State a sneak preview of his remarks, he is not allowed to speak. And it chills his speech by forcing him to "reduce to writing the proposed set presentation." *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1233 (4th Cir. 1989).[7]

The Department claims that the literature requirement prevents fraud and ensures that the public "will have access through FOIA to information about what the charity intends for its paid solicitors to discuss when soliciting donors on its behalf." Opp. at 25. But the Constitution guarantees the right to speak free from the prying eyes of the government and the public; "[t]he simple interest in providing . . . additional relevant information" does not justify a public disclosure requirement. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348 (1995).

If one accepts the Department's concessions regarding the scope of the script requirement, the requirement fails to further the State's interests. The Department claims that Mr. Kissel must submit a rough outline months or years before any particular conversation, that he may depart from it freely, and it need not contain anything he in his own judgment deems confidential. If he is truly free to add, subtract, withhold, and depart at will from the script, the requirement does nothing to prevent fraud or provide useful information. Any benefit is therefore overwhelmed by the chill on Mr. Kissel, who read the plain language of the statute and altered his speech accordingly.

## C.    Donor Disclosure Requirement

The Department claims the donor disclosure requirement prevents fraud. Opp. at 29–30. But Defendant's concessions show the law cannot survive heightened scrutiny. The state imposes

---

[7] The Department argues that since Mr. Kissel has vocally criticized some government policies, he should not be concerned about being required to submit critical remarks to the Department and the public. Opp. at 26. But Mr. Kissel is operating as a fundraiser on behalf of JMC, not on his own behalf as a public commentator. Kissel Suppl. Decl. ¶ 5. He has a duty to maintain confidential information that JMC has provided to him, and his private conversations with donors are different from an op-ed. The suggestion that publishing an op-ed gives the State carte blanche to monitor one's private conversations is without support in the law. Mr. Kissel will necessarily feel constrained in his ability to speak freely if he knows that he must submit even condensed versions of his private donor remarks to the State.

an obligation but has never in nine years utilized this information; this suggests that either the purpose is not truly important or that the fit is not "commensurate with the seriousness of the actual burden on First Amendment rights." *Citizens United v. Schneiderman*, 882 F.3d 374, 382 (2d Cir. 2018). Also, the law does not impose the same requirement on donations made directly to a charity or to unpaid fundraisers, so it would be easy to avoid the requirement. "A law cannot be regarded as protecting an interest 'of the highest order' . . . when it leaves appreciable damage to that supposedly vital interest unprohibited," *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993), or when the fit between the law's purpose and its impact is so attenuated.

The Department relies heavily on the Second Circuit's decision in *Schneiderman* but fails to respond to how that case is distinguishable. Memo. in Support at 34. In particular, the law at issue in that case strictly prohibited disclosing donor information, but did not impose additional record keeping requirements, just the submission of existing IRS documents. *Id.;* Opp. at 29 (noting this fact in discussing *Schneiderman*). The Department also fails to respond to the ways that Mr. Kissel shows the law here could be more narrowly tailored. Memo. in Support at 34–35.

Finally, the Department argues that Mr. Kissel's concerns about the donor disclosure requirement are purely speculative. But Mr. Kissel is speaking from many years of personal and professional experience interacting with donors and responding to their concerns, and published research. Kissel Suppl. Decl. ¶¶ 6–14; Memo. in Support at 30 n.3.

## IV.    Vagueness and Overbreadth Remain Significant Problems

The Department has now had two chances to clarify which conversations with prospective donors qualify as "indirect" solicitation. Both times it has failed to do so. Mr. Kissel's questions are simple: (A) Will he be violating Connecticut law if he refuses to register as a paid solicitor but sits in on a call with a prospective donor (the second scenario in his letter), or (B) sends an email

to a prospective donor telling them about JMC and offering to make an introduction to officers of the organization to discuss a prospective donation (the third scenario)? When a law imposes potential criminal consequences, it must provide "fair notice of what is prohibited." *United States v. Williams*, 553 U.S. 285, 292 (2008). Connecticut's definition of "indirect" solicitation and the Department's repeated failure to provide any interpretation falls short of that minimal requirement and is unconstitutionally vague as applied to Mr. Kissel's speech.

As to overbreadth, the Department has effectively conceded that Mr. Kissel's speech, which focuses on personal conversations with acquaintances, "is unique and unusual" and that the challenged laws were designed to cover an altogether different category of speech. Opp. at 1, 8, 36. The law is overbroad because it sweeps in all of these admittedly dissimilar conversations.[8]

## V.     If Mr. Kissel is Likely to Prevail on the Merits then He Is Entitled to an Injunction

Because Mr. Kissel suffers a First Amendment injury, he is presumed to suffer an irreparable injury, *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003), and an injunction is presumed to be in the public interest. *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). The Department cites inapposite non-First Amendment cases. Given the important free speech rights at stake this case, it is clear that if Mr. Kissel is likely to prevail on the merits, then he is entitled to a preliminary injunction.

### CONCLUSION

This Court should grant Mr. Kissel's motion for a preliminary injunction.

---

[8] Connecticut requires professional fundraisers to disclose their financial compensation in each conversation with a prospective donor. Conn. Gen. Stat. § 21a-190f(e). The Supreme Court invalidated a substantially similar requirement in *Riley v. Nat'l Fed'n of the Blind of N. Carolina*, 487 U.S. 781, 798 (1988). Consistent with the Department's response to Mr. Kissel's letter, Defendant here confirms that the Department is not enforcing the financial disclosure requirement at all and does not intend to enforce it in the future. Opp. at 31–32. Accordingly, a preliminary injunction on this issue is likely unnecessary. Plaintiff does not, however, concede that this claim is moot. *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (internal quotation marks omitted)).

DATED:  April 15, 2021.

                                Respectfully submitted,

                                DANIEL M. ORTNER
                                JAMES M. MANLEY
                                Pacific Legal Foundation

                                /s/ Daniel M. Ortner
                                DANIEL M. ORTNER
                                Cal. Bar No. 329866*
                                Email: dortner@pacificlegal.org
                                Pacific Legal Foundation
                                930 G Street
                                Sacramento, CA 95814
                                Telephone: (916) 419-7111
                                Facsimile: (916) 419-7747

                                JAMES M. MANLEY
                                Ariz. Bar No. 031820*
                                Email: jmanley@pacificlegal.org
                                Pacific Legal Foundation
                                3241 E. Shea Blvd., #108
                                Phoenix, AZ 85028
                                Telephone: (916) 419-7111
                                Facsimile: (916) 419-7747

                                *Attorneys for Plaintiff*
                                *Adam Kissel*

                                *\*admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2021, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing

system. Parties may access this filing through the Court's system.

Respectfully submitted,

DANIEL M. ORTNER
JAMES M. MANLEY
Pacific Legal Foundation

/s/ Daniel M. Ortner
DANIEL M. ORTNER